IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RASHAAD COLLINS, | CV 18-196-M-DLC-KLD |
| Plaintiff, | |
| vs. | |
| | FINDINGS AND |
| PLANNED PARENTHOOD OF | RECOMMENDATIONS OF UNITED |
| MONTANA and COURTNEY EVANS, | STATES MAGISTRATE JUDGE |
| Defendants. | |

Pending is Defendants' Motion for Summary Judgment. (Doc. 31.) Having considered the parties' arguments and evidence, the Court finds that the Motion for Summary Judgment should be granted and this matter dismissed.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

1

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed.R.Civ.P. 56(c)(1)(B). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita*

2

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed.R.Civ.P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the

3

opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

On July 26, 2019, simultaneous with the filing of their Motion for Summary Judgment, Defendants filed a "Notice and Warning to Plaintiff." (Doc. 33.) The Notice explained the requirements for opposing a motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II. FACTS

Mr. Collins was a pre-trial detainee at the Missoula County Detention Facility ("MCDF") at all times relevant to the Complaint. (Complaint, Doc. 2 at 2, 4.) Defendant Planned Parenthood of Montana, Inc. ("PPMT") is the medical treatment provider at the MCDF. (Statement of Undisputed Facts, Doc. 32-1 (hereinafter "SUF") at ¶ 2.) At all times relevant to the Complaint, Defendant Courtney Evans was employed by PPMT and was the Health Services Administrator at the MCDF. (SUF at ¶ 3.) As the Health Services Administrator, Ms. Evans was responsible for the day-to-day clinical operations and oversight of medical staff employed at MCDF which included nurses, administrative staff, and a nurse practitioner. (Evans Aff., Doc. 32-4 at 1, ¶ 5.) Ms. Evans is a Registered Nurse, but she could not diagnose or prescribe medications for inmates at MCDF.

4

(Evans Aff., Doc. 32-4 at 2, ¶ 10.)  Martha Laskos ("NP Laskos"), the nurse practitioner at MCDF, was responsible for prescribing medications to the inmates at MCDF.  (Evans Aff., Doc. 32-4 at 2, ¶ 9.)

Mr. Collins arrived at MCDF with a self-reported history of "chronic hip pain."  On October 26, 2018, he requested Tizanidine or an alternative pain medication to manage his hip pain.  (Laskos Aff. Doc. 32-5 at 2; Complaint, Doc. 2 at 3.)  On October 27, 2018, Mr. Collins was informed that Tizanidine was not provided at MCDF and that PPMT was reviewing his medical charts (medical records, treatment notes, etc.) for an alternative.  He contends no alternative was immediately given.  (Laskos Aff., Doc. 32-5 at 2, Complaint, Doc. 2 at 3.)  On October 30, 2018, Mr. Collins requested to see a medical provider about the pain he had been suffering for the first four weeks he was at MCDF.  (Complaint, Doc. 2 at 3.)  Defendants indicate that Mr. Collins also renewed his request for an alternative pain medication on this date.  (Laskos Aff., Doc. 32-5 at 2.)  On October 31, 2018, Mr. Collins was told his chart was under review.  (Complaint, Doc. 2 at 3.)

On November 1, 2018, NP Laskos told Mr. Collins that she had ordered him Meloxicam.  (Laskos Aff., Doc. 32-5 at 2, ¶ 9.)  Defendants made an intentional decision to follow the MCDF drug formulary and treat Mr. Collins's pain with Meloxicam (an anti-inflammatory), with Oxcarbazepine (a medication used for

5

chronic pain), and with an over-the-counter anti-inflammatory.  (Evans Aff., Doc. 32-4 at 2, ¶ 11; Laskos Aff., Doc. 32-5 at 3, ¶ 11.)

On November 3, 2018, Mr. Collins asked to stop taking Meloxicam because he claimed it did not manage his pain.  He also indicated that his medical chart showed that he had no cartilage in his hip joint.  (Laskos Aff., Doc. 32-5 at 2, ¶ 8; Complaint, Doc. 2 at 3-4.)

On November 5, 2018, Mr. Collins submitted a grievance.  Nurse Evans responded telling Mr. Collins that MCDF had received some medical records from the Yellowstone County Detention Facility ("YCDF") but had not received any records from outside providers regarding his hip condition.  She told Mr. Collins that Tizanidine was not available at MCDF but he had been offered anti-inflammatory medications and Oxcarbazepine for pain.  (Doc. 32-6.)

On November 5, 2018, NP Laskos explained to Mr. Collins that the remaining pain treatment options available to him at MCDF included Ibuprofen, Indomethacin, and Naproxen.  NP Laskos asked Mr. Collins to tell her if he wanted to take any of those medications.  (Laskos Aff., Doc. 32-5 at 2, ¶ 9.)

On November 6, 2018, Mr. Collins again requested medication for his pain. (Complaint, Doc. 2 at 4.)  On November 7, 2018, PPMT responded that MCDF did not allow Amitriptyline but Mr. Collins was receiving Oxcarbazepine and had declined Meloxicam.  (Laskos Aff., Doc. 32-5 at 2, ¶ 9; Complaint, Doc. 2 at 4.)

On November 10, 2018, NP Laskos told Mr. Collins that they had offered all treatment options available at MCDF. She also explained that Meloxicam could take up to two weeks to become effective. She again asked him if he wanted any of the previously listed medications, but he did not respond to her inquiry. (Laskos Aff., Doc. 32-5 at 2, ¶ 9.)

Mr. Collins submitted a grievance on November 8, 2018. Nurse Evans responded on November 14, 2019 explaining that Mr. Collins was scheduled to see the provider, but there was a wait because the provider was only at MCDF on a limited basis. Nurse Evans indicated they were aware of his chronic hip issues, that an anti-inflammatory would be available for him at med pass, and that they had requested his records from the Billings Clinic. (November 14, 2018 Grievance response, Doc. 32-7.)

On November 8, 2018, Mr. Collins's criminal attorney argued in state court that Mr. Collins had not received medical attention at MCDF. That same date, the Standing Master for his criminal case ordered the County Attorney to call the medical provider. On November 15, 2018, Mr. Collins's attorney again argued to the state court that Mr. Collins was not receiving medical attention or treatment from the provider at MCDF. The Standing Master again ordered the County Attorney to call the medical provider. (Complaint, Doc. 2 at 4.)

Mr. Collins contends Defendants only provided him over-the-counter

medications and/or an anti-inflammatory for his pain.  (Complaint, Doc. 2.)  He filed his Complaint on December 7, 2018.  (Complaint, Doc. 2.)

At some point, Mr. Collins was transferred to YCDF.[1]  He returned to MCDF on January 17, 2019 and PPMT made an exception and provided him with Tizanidine on a short-term basis for 14 days.  PPMT, however, required Mr. Collins to have a follow-up visit after the 14 days.  He refused all further medical treatment at MCDF and as a result PPMT refused to renew the Tizanidine prescription.  (Evans Aff., Doc. 32-4 at 2, ¶¶ 15-16.)

NP Laskos met with Mr. Collins in person on January 28, 2019 but Mr. Collins refused to be seen and NP Laskos could not prescribe any medication without at least talking with him.  NP Laskos was willing to prescribe medications for Mr. Collins, but he first had to speak with her, and she wanted him to undergo an x-ray because he had not seen an orthopedic specialist for ten years.  Mr. Collins did not respond.  (Laskos Aff., Doc. 32-5 at 2, ¶ 9.)

NP Laskos met in person with Mr. Collins on November 21, 2018, January 28, 2019, and February 11, 2019.[2]  On each occasion, Mr. Collins refused to discuss his issues with her or receive treatment by anyone because of alleged

---

[1] Mr. Collins must have been transferred to YCDF prior to November 28, 2018, the date he signed his Complaint and indicated it was executed at YCDF.

[2] Nurse Laskos's Affidavit indicates she met with Mr. Collins on January 28, 2018 and February 11, 2018 (Doc. 32-5 at 3, ¶ 10).  Given the dates of Mr. Collins's incarceration, the Court assumes these meetings occurred in 2019.

concerns of the MCDF guard presence in the examination room. NP Laskos

explained that MCDF required a guard to be in the room and that his health

information was protected by the Health Insurance Portability and Accountability

Act of 1996 (HIPAA). Mr. Collins still refused any examination or treatment.

(Laskos Aff., Doc. 32-5 at ¶¶ 10-11.)

Mr. Collins did not request treatment after February 11, 2019. (Laskos Aff.,

Doc. 32-5 at ¶ 12.)

## III. ANALYSIS

At all times relevant to the Complaint, Mr. Collins was a pretrial detainee.

As such, his medical care claims arise under the due process clause of the

Fourteenth Amendment to the United States Constitution. *Oregon Advocacy*

*Center v. Mink*, 322 F. 3d 1101, 1120 (9th Cir. 2003). "[C]laims for violations of

the right to adequate medical care brought by pretrial detainees against individual

defendants under the Fourteenth Amendment must be evaluated under an objective

deliberate indifference standard." *Gordon v. County of Orange*, 888 F. 3d 1118,

1124-25 (9th Cir. 2018), *cert. denied*, 139 S. Ct. (2019). A pretrial detainee must

prove the following elements to establish a denial of medical care claim:

> (i) the defendant made an intentional decision with respect to the
> conditions under which the plaintiff was confined; (ii) those
> conditions put the plaintiff at substantial risk of suffering serious
> harm; (iii) the defendant did not take reasonable available measures to
> abate that risk, even though a reasonable official in the circumstances
> would have appreciated the high degree of risk involved—making the

consequences of the defendant's conduct obvious; and (iv) by not
taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125.

The first *Gordon* factor asks whether the defendants make an intentional

decision related to the conditions of plaintiff's confinement. *Gordon*, 888 F. 3d at

1125. There is no dispute between the parties that Defendants' decisions regarding

Mr. Collins's medications were intentional. (Evans Aff., Doc. 32-4 at ¶ 11; Laskos

Aff., Doc. 32-5 at ¶ 11.) Accordingly, the first *Gordon* prong is satisfied.

Next, *Gordon* requires the Court to consider whether Defendants' intentional

decisions concerning Mr. Collins's medical care put him at a substantial risk of

suffering serious harm. *Gordon*, 888 F. 3d at 1125. The undisputed facts do not

support an inference that the course of medical treatment undertaken by

Defendants put Mr. Collins at risk of suffering serious harm. Mr. Collins first

requested Tizanidine pain medication on October 26, 2018. (Complaint, Doc. 2 at

3.) On November 1, 2018, NP Laskos prescribed Meloxicam for Mr. Collins

(Laskos Aff., Doc. 2), but he asked to stop taking Meloxicam on November 3,

2018 (Complaint, Doc. 2 at 3-4). Mr. Collins does not specifically dispute

Defendants' evidence that they provided him with Meloxicam (an anti-

inflammatory), Oxcarbazepine (a medication used for chronic pain), and an over-

the-counter anti-inflammatory to treat his pain. (Evans Aff., Doc. 32-4 at 2, ¶ 11;

Laskos Aff., Doc. 32-5 at 3, ¶ 11.) In fact, he admitted in his Complaint that

10

Defendants gave him over-the-counter medications and an anti-inflammatory for his pain.  (Complaint, Doc. 2.)  His disagreement about the specific medications provided to treat his pain is insufficient to establish that Defendants put him at risk of suffering serious harm, especially because he did not even try to see if the Meloxicam would provide relief before he asked to stop taking it.

Mr. Collins returned to MCDF from YCDF on January 17, 2019 and PPMT made an exception and gave him a 14-day prescription for Tizanidine.  PPMT refused to renew the Tizanidine prescription because Mr. Collins would not communicate with medical staff.  (Laskos Aff., Doc. 32-5 at 2, ¶ 2.)  Mr. Collins admitted in his Disclosure Statement that Defendants told him they would consider renewing his prescription for Tizanidine if he would just meet with medical staff, but he refused to do so because of "a conflict of interest."  (Doc. 30 at 4.)  The Court finds that Defendants did not put Mr. Collins at risk of suffering serious harm by denying him medications because he refused to meet with NP Laskos to discuss renewing the Tizanidine prescription.  The undisputed evidence is insufficient to support a finding in Mr. Collins's favor under *Gordon*'s second prong.  Mr. Collins has not made a sufficient showing to establish that the acts of Defendants created a substantial risk of harm.  *See Celotex*, 477 U.S. at 322.

The third *Gordon* element requires an examination of whether Defendants took reasonable available measures to abate any risk to Mr. Collins.  "[T]he

defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstance of each particular case." *Gordon*, 888 F.3d at 1125.  The mere lack of due care is insufficient to prove a Fourteenth Amendment violation.  *Id.*  "Thus, the plaintiff must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.'"  *Id.* (*quoting Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)*, cert. denied*, 137 S. Ct. 831 (2017)).

As set forth above, the undisputed facts show that Defendants tried to give Mr. Collins alternative medications.  Further, Defendants took reasonable measures to abate any risk of harm when they tried to examine Mr. Collins prior to renewing his prescription for Tizanidine in January 2019.  Mr. Collins disagreed with Defendants' efforts to treat his pain, but it is undisputed that Defendants took measures to abate the risk to Mr. Collins.  Mr. Collins presented no evidence to dispute the legitimacy of these measures.  Accordingly, Mr. Collins failed to demonstrate a genuine issue relative to the third prong of *Gordon*.

Defendants have the initial burden to produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Celotex*, 477 U.S. at 322-23.  The Court finds Defendants met their burden under Rule 56(c) by showing that they took

reasonable available measures to abate any risk of Mr. Collins suffering serious harm by prescribing alternative medications and trying to meet with Mr. Collins prior to renewing the Tizanidine prescription in January 2019.

In response, Mr. Collins presented no evidence to demonstrate a genuine factual dispute on these matters.  Mr. Collins makes broad conclusory statements that he was denied all medical care but his representations in his Complaint (Doc. 2) and Disclosure Statement (Doc. 30) indicate that he was in fact prescribed medications for his hip pain, albeit not the specific medications he requested.  A difference of opinion concerning the course of treatment is insufficient to rise to the level of a constitutional claim.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (in considering the conditions of pretrial detention, courts consider whether the conditions amount to punishment); *Toguchi v. Chung*, 391 F.3d 1051, 1057-58 (9th Cir. 2004) (neither a difference of opinion concerning the course of treatment nor mere negligence in treating a medical condition amounts to deliberate indifference).

Mr. Collins presented insufficient evidence to support his representations. His own filings contradict his conclusory allegations of a complete denial of medical treatment.  It is clear from the evidence submitted that Mr. Collins was prescribed medications for his hip pain, but he refused to even try some of those medications.  The fact that Mr. Collins refused to take prescribed medications in

13

November 2018 and refused to follow up with medical providers in January 2019 defeats his claims under the Fourteenth Amendment.

Considering the facts of this case under the standard provided by *Gordon*, the Court finds Mr. Collins's denial of medical care claim does not present a triable issue. Accordingly, Defendants are entitled to judgment in their favor as a matter of law. *See* Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

Defendants have met their burden of proving "that there is an absence of evidence to support" Mr. Collins's denial of medical care claims. *See Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed.R.Civ.P. 56(c)(1)(B). Mr. Collins, in turn, failed to establish that a genuine issue as to any material fact exists. *See Matsushita*, 475 U.S. at 586-87. There is a failure of proof concerning several essential elements of Mr. Collins's claim necessitating entry of summary judgment. *See Celotex*, 477 U.S. at 322. Mr. Collins filed insufficient evidence to suggest that a reasonable jury could return a verdict in his favor. *See Anderson*, 477 U.S. at 248. Defendants are entitled to summary judgment.

Based upon the foregoing, the Court issues the following:

### ORDER

1. The Clerk of Court is directed to serve a copy of these Findings and

Recommendations on Mr. Collins at his address of record and c/o Billings

Probation and Parole, 2615 4th Avenue South, Billings, MT  59101 the address

indicated for Mr. Collins on the Montana Department of Corrections' website.

2.  Pursuant to Local Rule 5.3, Mr. Collins must immediately file a Notice of

Change of Address specifying his new address for service.  A failure to comply

with this requirement may result in dismissal of this action.

Further, the Court issues the following:

### RECOMMENDATIONS

1.  Defendants' Motion for Summary Judgment (Doc. 31) should be

GRANTED and this matter should be DISMISSED.

2.  The Clerk should be directed to enter judgment and close this matter.

3.  The Clerk of Court should also be directed to have the docket reflect that

the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate

Procedure that any appeal of this decision would not be taken in good faith.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations

within fourteen (14) days after service (mailing) hereof.[3]  28 U.S.C. § 636.  Failure

---

[3]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would

to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 29th day of January, 2020.

Kathleen L. DeSoto
United States Magistrate Judge

---

otherwise expire under Rule 6(a)."  Mr. Collins is being served by mail; therefore, he is entitled to an additional three days after the period would otherwise expire.